**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| **SCOTT WOLFE, JR. individually,**<br>**and derivatively on behalf of**<br>**nominal defendant BRELLY, INC.** | **CIVIL ACTION NO.** |
|  | **JUDGE:** |
| **Plaintiffs** | **MAGISTRATE:** |
| **VERSUS** |  |
| **TOBIAS PATCH, and**<br>**BRELLY, INC.** |  |
| **Defendants** |  |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**
**AND COMPLAINT OF SCOTT WOLFE, JR.**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff Scott Wolfe, Jr. individually, and derivatively on behalf Brelly, Inc., who brings this Complaint against Tobias Patch and Brelly, Inc., and alleges as follows:

**I.     The Parties**

1. Plaintiff Scott Wolfe, Jr. ("Wolfe" or "Plaintiff") is a person of the full age of majority who is domiciled in and a citizen of the State of Louisiana.

2. Defendant and Nominal Defendant Brelly, Inc. ("Brelly") is a corporation that is incorporated in Delaware with its principal place of business in Alvin, TX. *See Exhibits 1 and 2*, and specifically the Certificate of Merger attached to Merger Agreement, included in the documents attached as *Exhibit 2* at p. 18.

3. Defendant Tobias Patch ("Patch") is a person of the full age of majority who is domiciled in and a citizen of the State of Texas.

1

#102085929v1

## II.    Jurisdiction and Venue

4.   This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff, Wolfe, and the Defendants, Patch and Brelly Inc., and the value of the controversy exceeds $75,000, exclusive of interest and costs, as set forth in the below allegations.

5. This Court also has subject matter jurisdiction over this matter under 28 U.S.C § 1331 because Plaintiff Wolfe alleges violations of Sections 32 and 43 the Lanham Act, 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a), and the Defend Trade Secrets Act, 18 U.S.C. § 1836.

6. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims brought herein occurred in this District.

## III.    Factual Allegations

7. Patch incorporated Insurance Claim Services, Inc. (hereinafter "ICS") on March 2, 2022, and was the corporation's sole shareholder. *See Exhibit 1*.

8. Between March 10, 2022, and August 8, 2022, ICS raised a total of $700,000 pursuant to Simple Agreements for Future Equity ("SAFE") notes from the following parties (hereinafter together referred to as the "SAFE Notes"): (a) $100,000 from Patrick Comer on or around 3/10/2022; (b) $250,000 from Benson Capital Partners Fund I, LP on or around 6/21/2022; (c) $50,000 from New Orleans Startup Fund, on or around 6/21/2022; and (d) $300,000 from Hodge Podge Investments, LLC, on or around 8/8/2022. *See Exhibit 3*.

9. ICS began developing mobile applications and web-based software for sale in the insurance claims and restoration market.

10. ICS leased office space, engaged independent service providers, licensed the use of productivity software, and hired and paid full-time employees, including (a) hiring Tobias Patch

2

#102085929v1

on March 2, 2022; (b) hiring Harrison Fox on November 14, 2022; (c) hiring Reed Stephens on November 14, 2022; and (d) hiring Alston Walker on January 18, 2023. *See Exhibit 4*.

11. Wolfe incorporated Brelly, Inc. (hereinafter "Original Brelly, Inc.") on July 12, 2022, and was the corporation's sole shareholder. *See Exhibit 5*.

12. ICS's tradename was "Claimly," and the company desired to change its tradename to "Brelly."

13. In or around September 2022, Patch reached out to Wolfe (who was at the time and remains to be domiciled and physically present in New Orleans, Louisiana) about Brelly, and the two engaged in discussions about the businesses.

14. On April 5, 2023, Original Brelly, Inc. and ICS agreed to a Merger, whereupon ICS was the surviving entity (the "Merger"). The Merger Agreement is include in *Exhibit  2*, While ICS was the "Surviving Entity" from the merger, it concurrently changed its name to "Brelly, Inc." pursuant to Article I of its April 5, 2023, Amended and Restated Certificate of Incorporation (also included in *Exhibit 2*), and thereafter, became "Brelly, Inc." (hereinafter "Brelly").

15. In consideration of the Merger: (a) ICS delivered a $75,000 promissory note to Wolfe (the "Wolfe Promissory Note"); (b) ICS issued 500,000 of ICS common shares to Wolfe (the "Wolfe Common Shares"); (c) ICS agreed that Wolfe "*shall* have the right to repurchase"[1] the Brelly name and intellectual property "in the event the Surviving Corporation ceases to be a going concern." for $100 and the cancellation of the Wolfe Promissory Note; and (d) By Side Letter Agreement (the "Side Letter Agreement"), Patch agreed to create a Board of Directors with more than one member (the "New Board") and to elect Wolfe to a seat on the New Board (together, the "Board Obligation"). *See Exhibit 2*.

---

[1] Emphasis added.

3

16. On July 19, 2023, Brelly raised an additional $100,0000 on a SAFE Note from Wolfe (the "Wolfe SAFE Note"), bringing the entity's total capital raised to $800,000. *See Exhibit 6.*

17. Although the Side Letter Agreement obligated Patch to create a Board of Directors with more than one member and to name Wolfe to the Board, Patch has failed to follow through on those obligations, in breach of the Side Letter Agreement.

18. Wolfe repeatedly reminded Patch of the Board Obligation, including written communications on September 13, 2023, September 22, 2023, and November 2, 2023, all to no avail. *See Exhibit 7.*

19. At all material times from ICS' March 2022 incorporation through the April 2023 Brelly Merger, and until at least September 30, 2023, Brelly had the capital to and did conduct regular and ongoing operations, which included, but were not limited to: (a) Holding regular, daily, and weekly meetings; (b) Communicating via formal communication channels like email and Slack; (c) Maintaining leased office space; (d) Paying and engaging with its employees; (e) Releasing code and technology for sale; (f) Publishing content for public consumption; (g) Engaging with investors and raising capital for the business; (h) Creating internal and external materials for consumption; (i) Paying for ordinary business expenses, including purchasing productivity tools and software products necessary for business operations, products, and promotion.

20. As of September 30, 2023, Brelly, through Patch's mismanagement, had never obtained a single paying customer and never received a single dollar of revenue.

21. Despite the failure to create any kind of incoming revenue stream, from March 2022 through approximately September 30, 2023, Patch ramped up spending and Brelly began to burn through approximately $50,000 per month in operating expenses.

4

22. On or around September 30, 2023, Brelly had exhausted all of its $800,000 in capital, and the company had ongoing financial obligations, outstanding accounts payable, no revenue, no customers, and no operating capital (the "Zero Cash Date").

23.  At all points up to that Zero Cash Date, Patch continued to pay himself a full salary despite bringing in no customers and no revenue.

24. For approximately 2-4 weeks following the Zero Cash Date, Patch continued accruing liabilities by getting additional labor from Brelly's full-time employees, making requests and receiving materials from independent contractors, and using productivity tools and software.

25. Patch burned through Brelly's entire cash reserves without ever honoring his agreement to form a Board to have oversight over his activities.

26. Because Brelly was without investment capital, operating capital, revenue, customers, or material prospects, it began to voluntarily shut down its operations by terminating all full-time employees, discontinuing relationships with independent contractors, and winding down and terminating all internal meetings, discussions, appointments, and communications.

27. Unable to pay its liabilities, Brelly went into arrears with *at least* the following key productivity tools, software products, and/or service providers:  Google, Slack, Gusto, Figma, Yoast, Ahref, Amazon Web Services, Sentry, Pry, Notion, Covalent Logic, and DocSend. *See Exhibit 8*.

28. As of this date, Brelly has ongoing liabilities and/or incurred liabilities to full-time employees who worked for weeks without pay after the Zero Cash Date.

29. Brelly unpublished its Apple App Store app and made it no longer available for download or use by prospects.

#102085929v1

30. In violation of the contractual obligations owed to Wolfe, Patch used the Brelly name, trade secrets, and intellectual property to advance his own personal interest and/or interest within other business pursuits, such as with his separate business entity, Worldwide Adjusters, LLC. *See Exhibit 9*.

31. In addition, in violation of laws against the unauthorized practice of public adjusting and unauthorized practice of law, Patch provided public adjusting and/or legal services through the Brelly name and entity. *See Exhibit 9.*

32. In another sign of Patch's reckless and disloyal behavior, on information and belief, he commingled funds between Brelly, himself personally, and/or Worldwide Adjusters, LLC.

33. While Patch was improperly using Brelly intellectual property to build his own side business, he refused to abide by the Board Obligation to create a Board with Wolfe on the Board that would have provided oversight over Patch.

34. Wolfe contacted Patch on multiple occasions requesting that Patch consider, pursuant to the merger agreement, declaring that Brelly was no longer a going concern.

35. Wolfe received no response to these requests.

36. On January 22, 2024, Wolfe wired $100 to Brelly's bank account and sent written correspondence exercising his contractual intellectual property Repurchase Right to Brelly (a) through email to Brelly's corporate counsel, William Bishop, and Brelly's CEO and Director, Tobias Patch, and (b) through certified mail to Brelly's corporate counsel at his Phelps Dunbar address and to the Brelly principal business office at 2425 Ryan Drive, Alvin, TX, 77511. *See Exhibit 10*.

6

37. By not replying to these requests and refusing to "reasonably determine" that Brelly ceased being a going concern, Patch acted in bad faith, violating his duties as a Director of Brelly and causing Brelly to breach the Merger Agreement.

38. Instead of ever replying to Wolfe's requests, Patch, through Brelly's counsel, without consulting any financial experts to conduct a going concern audit, advised that "he believes" that Brelly is a going concern, retaining and misappropriating the intellectual property that belongs to Wolfe, and using it for his own personal benefit.

## IV.    Causes of Action

### COUNT I
### Breaches of Fiduciary Duty

39. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated here.

40. Wolfe is a common shareholder of Brelly and has been a common shareholder at all times relevant to this Complaint. Wolfe brings this claim derivatively on behalf of Brelly and its shareholders.

41. Patch owed fiduciary duties of care and loyalty to Brelly and its shareholders to act in Brelly's best interests and to manage the company with diligence and care.

42. As alleged here, Patch immediately breached those fiduciary duties by refusing to abide by the Board Obligation and create a Board of Directors, with Wolfe, the largest shareholder on it, to provide oversight over the management of the Company. This breach, resulting in a complete lack of oversight over Patch, has caused harm to the shareholders.

43. Patch then proceeded, without that oversight, to burn through the cash of the Company without ever bringing in any revenue while continuing to pay himself, and other insiders, a full

7

salary up to the moment of the Zero Cash Date, and further incurring liabilities after the Zero Cash Date that Brelly had no ability to pay.

44. When Wolfe and Patch first discussed the potential merger and Wolfe's potential investments in ICS/Brelly, Wolfe inquired into the status of certain "side businesses" that Patch was apparently involved with, namely businesses named Worldwide Restorations and InsuranceAppraisal (the "side businesses"). At that time, Patch assured Wolfe that Patch was no longer involved with these businesses.

45. On information and belief, Patch was and remains to be involved with these side businesses and on information and belief has further misappropriated and misused Brelly's intellectual property and trade secrets (specifically identified below) to support these side businesses in violation of Federal Law (also detailed below), putting his own interests ahead of those of Brelly and its shareholders and causing additional damage to the shareholders.

46. Patch has refused to act in good faith by refusing to determine that Brelly is no longer a going concern, even though Brelly had no cash, no source of revenue, no prospects for revenue in the foreseeable future, no employees, no office space, was unable to pay its debts as they became due, had liabilities exceeding its assets rendering it insolvent, and completely lacked sufficient resources to operate for the foreseeable future without the threat of liquidation. He has instead, in bad faith, ignored all requests to make this determination.

47. As a direct or proximate result of these breaches of fiduciary duties, the shareholders' investments were damaged (including Wolfe's investments made via the notes detailed above that exceed the sum of $75,000 exclusive of interest), and Wolfe has been blocked from exercising his rights. This includes, but is not limited to, Wolfe's ability to purchase back his intellectual property, a harm which cannot be rectified by monetary damages alone.

8

48. Patch has further breached his fiduciary duties to Brelly and its shareholders in the following ways: (a) by breaching the Confidential Information and Invention Assignment Agreement and Employment Agreement between Patch and Brelly, which includes, but is not limited to, the breaches of Confidentiality, Non-Competition, Non-Solicitation, Inventions, Ownership of Inventions, Intellectual Property, and U.S. Defend Trade Secrets Act provisions contained therein via his participation in (and use of Brelly's intellectual property) in his side businesses, (b) by damaging Brelly and/or its goodwill by exposing it to liability due to Patch's misappropriation of funds and his engaging in activities that could constitute the unauthorized practice of public adjusting or law, and (c) by damaging Brelly and/or its goodwill by exposing Brelly to liability for breaches of duties to creditors, even after the company reached insolvency.

## COUNT II
### Injunctive Relief

49. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated here.

50. Wolfe brings this claim derivatively on behalf of Brelly and its shareholders.

51. Wolfe seeks both a preliminary and permanent injunction to prevent Patch from continuing to unlawfully use Brelly's intellectual property in connection with Patch's side businesses (detailed above) in violation of Federal Law (detailed below). This misappropriated intellectual property includes but is not limited to the Brelly trademark, Brelly's "Fully, Fairly, and Fast" service mark, Brelly's "insurance claims made easy" service mark, Brelly's content strategy, and Brelly's content layout and structure.

52. Patch's continued unlawful use of Brelly's intellectual property with his side businesses poses a substantial threat of irreparable injury to Brelly and its shareholders because (a) monetary damages would be difficult if not impossible to quantify and would be inadequate to fully

9

compensate Brelly and its shareholders for Patch's actions, (b) the damage to Brelly's goodwill cannot be repaired by monetary damages, (c) on information and belief, Patch would be unable to pay monetary damages due to his financial condition, (d) the public interest in enforcing federal intellectual property laws would be served by ordering injunctive relief[2] (e) the harm suffered by Brelly and its shareholders outweighs any potential harm to Patch for having to cease his unlawful activities and (f) Brelly and its shareholders have a substantial likelihood of success on the merits of their claim against Patch for misappropriating Brelly's intellectual property for use with Patch's side businesses.

### COUNT III
### Breach of Contract by Brelly

53. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated here.

54. Plaintiff brings this claim in his personal capacity against Brelly.

55. Brelly has breached the Merger Agreement entered into with Wolfe by refusing to fulfill in good faith its obligation in Section 6.1 to determine that Brelly is no longer a going concern and refusing to permit Wolfe to exercise his intellectual property repurchase right.

### COUNT IV
### Tortious Interference with Contract by Patch

56. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated here.

57. Plaintiff brings this claim in his personal capacity against Patch.

---

[2] *Quantum Fitness Corp. v. Quantum Lifestyle Centers*, 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999) ("The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." (citations omitted)).

#102085929v1

58. The Merger Agreement is an enforceable contract between Wolfe and Brelly.

59. Patch is aware of the contractual relationship between Wolfe and Brelly.

60. Patch intentionally and without justification induced Brelly to breach this contract by refusing to allow Brelly to determine that Brelly is no longer a going concern pursuant to Section 6.1 of the Merger Agreement.

61. The interference with Wolfe's contractual right has caused Wolfe to suffer harm by not being able to repurchase the intellectual property he created.

## COUNT V
## Breach of Contract by Patch

62. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated here.

63. Plaintiff brings this claim in his personal capacity against Patch.

64. Patch entered into the Side Letter Agreement with Wolfe, in connection with the Merger Agreement, where Patch agreed to form a Board of Directors of Brelly, appointing Wolfe as one of the directors.

65. Patch has breached this obligation.

66. This breach has deprived Wolfe the right, as a member of the Board, to bring a resolution for the Board to consider in good faith that Brelly is no longer a going concern which would then allow Wolfe to repurchase the intellectual property he created pursuant to Section 6.1 of the Merger Agreement, which has caused Wolfe to incur damages.

## COUNT VI
## Specific Performance

67. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated here.

68. Plaintiff brings this claim in his personal capacity against Brelly and Patch.

69. ICS/Brelly entered into the Merger Agreement with Wolfe under which Brelly was obligated under Section 6.1 to determine in good faith that Brelly was no longer a going concern and permit Wolfe to exercise his intellectual property repurchase right.

70. Additionally, Patch entered into the Side Letter Agreement with Wolfe, in connection with the Merger Agreement, where Patch agreed to form a Board of Directors of Brelly, appointing Wolfe as one of the directors.

71. Brelly and Patch have breached both of these obligations.

72. These breaches have deprived Wolfe the right, as a member of the Board, to bring a resolution for the Board to consider in good faith that Brelly is no longer a going concern which would then allow Wolfe to repurchase the intellectual property he created pursuant to Section 6.1 of the Merger Agreement, which has caused Wolfe to incur unquantifiable damages.

73. Because money damages alone are insufficient to adequately compensate Wolfe for these breaches and the resulting misappropriation of his intellectual property and trade secrets, Wolfe asks the Court to order specific performance of these obligations owed by Patch and Brelly.

## COUNT VII
### Declaratory Judgments

74. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated here.

75. Pursuant to 28 U.SC. § 2201, Wolfe asks the Court to issue declaratory judgments declaring that Brelly and Patch are in breach of their obligations to (1) determine in good faith that Brelly is no longer a going concern such that Wolfe may exercise his intellectual property repurchase right and (2) form a Board of Directors of Brelly, appointing Wolfe as one of the directors.

12

76. This Court has authority to issue these requested declaratory judgments, and the declaratory action is justiciable because an actual controversy exists between the parties.

**COUNT VIII**
**Violation of Sections 32 and 43 the Lanham Act, 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a)**

77.  Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated here.

78. Plaintiff brings this claim in his personal capacity against Patch and Brelly.

79.  Wolfe's misappropriated intellectual property detailed above includes legally protectable trademarks and trade dress, including but not limited to the name "Brelly," Brelly's Logo (tarp logo), its colors, font and design scheme, the design scheme/layout of its content resource pages, and the unique slogans/service marks: "Insurance Claims Made Easy," "Get Claims Paid Fairly, Fully, and Fast," "Insurance Help is Here," and "We've Got you Covered," and Brelly/Patch's unauthorized continued use of said marks creates a likelihood of confusion as to the source, affiliation or sponsorship of said marks.

80. Patch's use of Wolfe's protected marks with his side businesses detailed about constitutes an additional actionable violation of the Lanham Act.

81. In light of Patch/Brelly's misappropriation of this intellectual property, Wolfe seeks relief under and all available remedies provided by Sections 32 and 43 the Lanham Act, 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a).

**COUNT IX**
**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836.**

82. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated here.

83. Plaintiff brings this claim in his personal capacity against Patch and Brelly.

13

84. Wolfe's misappropriated intellectual property detailed above includes trade secrets including content strategy, keyword and topic targeting, content clustering strategy, market research, information architecture for products (including Claim Communicator, Deadline Calculator and other products) and other formulas, patterns, compilations, programs, devices, methods, techniques, and processes that derive independent economic value, both actual and potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and are the subject of efforts that are reasonable under the circumstances to maintain their secrecy, which relate to digital applications intended for use in interstate commerce.

85. Wolfe seeks relief under and all available remedies provided by the Defend Trade Secrets Act, 18 U.S.C. § 1836.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, the Plaintiff requests that the Court:

A.    Enter judgment in favor of Plaintiff and against Defendant Patch on the breaches of fiduciary duties;

B.    Enter judgment in favor of Plaintiff and against Defendants on the breach of contract claims;

C.    Enter judgment in favor of Plaintiff and against Defendant Patch on the claim of tortious interference with contract;

D.    Enter judgment in favor of Plaintiff and against Defendants on violations of the Lanham Act and Defend Trade Secrets Act;

E.    Enter the declaratory judgments detailed above;

14

F.    Order Defendants Patch and Brelly to specifically perform their obligations to Wolfe, as detailed above.

G.    Enter judgment in favor of Plaintiff and against Defendants awarding both actual and consequential damages to Brelly and its shareholders for the breaches of fiduciary duties and both actual and consequential damages for tortious interference with contract;

H.    Award Plaintiff costs, interest and attorneys' fees recoverable under any applicable law and all other further relief to which Plaintiff may be justly entitled.

I.    Plaintiff demands a jury on all claims so triable.

Respectfully submitted,


*/s/ Tarak Anada*
TARAK ANADA (#31598)
ALEXANDER N. BRECKINRIDGE, V (#36155)
JONES WALKER LLP
201 St. Charles Avenue – 49th Floor
New Orleans, Louisiana 70170-5100
Telephone:    (504) 582-8322
Facsimile:    (504) 589-8322
E-Mail:        tanada@joneswalker.com
                abreckinridge@joneswalker.com

**Attorneys for Scott Wolfe, Jr. individually, and derivatively on behalf Brelly, Inc.**

15

#102085929v1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CIVIL ACTION NO.**

**SCOTT WOLFE, JR. individually,**
**and derivatively on behalf of**
**nominal defendant BRELLY, INC.**

**JUDGE:**

**Plaintiffs**

**MAGISTRATE:**

**VERSUS**

**TOBIAS PATCH, and**
**BRELLY, INC.**

**Defendants**

**FED. R. CIV. P. 23.1(b) VERIFICATION**
**OF SCOTT G. WOLFE JR.**

Scott G. Wolfe, Jr. ("Wolfe") swears and verifies, under penalty of perjury, that:

1.    Wolfe is a common shareholder of Brelly, Inc., and has been a common shareholder at all times relevant to this Complaint;

2.    This action is not collusive to confer jurisdiction that this Honorable Court would otherwise lack;

3.    In addition to an assortment of verbal requests to Patch between April 2023 and January 10, 2024, Wolfe made numerous written and formal efforts to obtain desired action(s) from Patch, including: (a) Written requests to meet the Board Obligation on September 13, 2023, September 22, 2023, November 2, 2023; (b) Written request to Patch to acknowledge Brelly ceased to be an ongoing concern on January 10, 2024;  (c) Written correspondence to Patch to acknowledge Brelly ceased to be an ongoing concern on January 22, 2024; (d) Further verbal attempts through counsel

16

#102085929v1

between January 22, 2024, and the present date; (e) Contacting Alston Walker, a listed officer of the company, on or around February 9, 2024; (f) Contacting Patch in writing on February 13, 2024.

4.  All requests have been unproductive;

5.  Patch has not replied to Wolfe's requests, rendering any further effort or actions to request the desired action to be in vain.

6.  All factual allegations in the Complaint are true and correct to the best of his knowledge and understanding.

Dated: February 23, 2024

Scott Wolfe, Jr.

#102085929v1