# AMENDED AND RESTATED
# CERTIFICATE OF INCORPORATION
# OF
# INSURANCE CLAIM SERVICES INC.

Insurance Claim Services Inc., a corporation organized and existing under and by virtue of the provisions of the Delaware General Corporation Law (the "**DGCL**"), hereby certifies that:

1. The current name of this corporation is Insurance Claim Services Inc. The original Certificate of Incorporation was filed with the Secretary of State of the State of Delaware pursuant to the DGCL on October 16, 2001 (the "**Original Certificate**").

2. Pursuant to Sections 242 and 245 of the DGCL, this Amended and Restated Certificate of Incorporation, which restates and further amends the provisions of the Original Certificate, was duly proposed by the board of directors of Insurance Claim Services Inc. on April 5, 2023, and adopted by its stockholders on April 5, 2023:

3. The text of the Amended and Restated Certificate of Incorporation reads in its entirety as follows:

## ARTICLE I

The name of the corporation is Brelly, Inc. (the "**Corporation**").

## ARTICLE II

The address of the Corporation's registered office in the state of Delaware is 251 Little Falls Drive, Wilmington, New Castle County, Delaware 19808. The name of its registered agent at such address is Corporation Service Company.

## ARTICLE III

The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the Delaware General Corporation Law.

## ARTICLE IV

The aggregate number of shares which the Corporation shall have authority to issue is 10,000,000 shares of capital stock all of which shall be designated "Common Stock" and have a par value of $0.00001 per share.

## ARTICLE V

The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors. Elections of directors need not be by written ballot unless otherwise provided in the Bylaws of the Corporation. In furtherance of and not in limitation of the powers conferred by the laws of the state of Delaware, the Board of Directors of the Corporation is expressly authorized to make, amend, or repeal Bylaws of the Corporation.

PD.40697615.2

EXHIBIT
2

## ARTICLE VI

(A)    To the fullest extent permitted by the Delaware General Corporation Law, as the same exists or as may hereafter be amended, neither a director of the Corporation nor an officer of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or an officer.

(B)    The Corporation shall indemnify to the fullest extent permitted by law any person made or threatened to be made a party to an action or proceeding, whether criminal, civil, administrative or investigative, by reason of the fact that he, his testator or intestate is or was a director or officer of the Corporation or any predecessor of the Corporation, or serves or served at any other enterprise as a director or officer at the request of the Corporation or any predecessor to the Corporation.

(C)    Neither any amendment nor repeal of this Article VI, nor the adoption of any provision of the Corporation's Certificate of Incorporation inconsistent with this Article VI, shall eliminate or reduce the effect of this Article VI in respect of any matter occurring, or any action or proceeding accruing or arising or that, but for this Article VI, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

## ARTICLE VII

Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (A) any derivative action or proceeding asserting a claim on behalf of the Corporation, (B) any action or proceeding asserting a claim of breach of a fiduciary duty owed by any current or former director, officer, employee or agent of the Corporation to the Corporation or the Corporation's stockholders, (C) any action or proceeding asserting a claim against the Corporation arising pursuant to any provision of the Delaware General Corporation Law or the Corporation's Certificate of Incorporation or Bylaws, (D) any action or proceeding asserting a claim as to which the Delaware General Corporation Law confers jurisdiction upon the Court of Chancery of the State of Delaware, or (E) any action or proceeding asserting a claim governed by the internal affairs doctrine, in each case subject to said Court of Chancery having personal jurisdiction over the indispensable parties named as defendants therein.

## ARTICLE VIII

The name and mailing address of the incorporator are as follows:

Tobias Patch
2425 Ryan Drive
Alvin, TX 77511

******

- 2 -

PD.40697615.2

- 3 -

IN WITNESS WHEREOF, Insurance Claims Services Inc. has caused this Amended and Restated Certificate of Incorporation to be duly executed in its corporate name by its President and Chief Executive Officer, thereto duly authorized, this 5 day of April, 2023.

DocuSigned by:

*Tobias Patch*

C73C459CBB004B9...

Name:  Tobias Patch

Title:   President and Chief Executive Officer

PD.40697615.2

**THIS PROMISSORY NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"). NO SALE OR DISPOSITION MAY BE EFFECTED EXCEPT IN COMPLIANCE WITH RULE 144 UNDER SAID ACT OR AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL FOR THE LENDER SATISFACTORY TO BORROWER THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE SECURITIES ACT OR RECEIPT OF A NO-ACTION LETTER FROM THE SECURITIES AND EXCHANGE COMMISSION.**

## PROMISSORY NOTE

**$75,000.00**                                                          **April 5 , 2023**

**FOR VALUE RECEIVED**, **INSURANCE CLAIM SERVICES, INC.**, a Delaware corporation ("***Borrower***"), hereby promises to pay to the order of Scott Wolfe ("***Lender***"), in lawful money of the United States of America and in immediately available funds, the principal sum of $75,000.00 with simple interest on the outstanding principal amount at the rate of 5.00% per annum (the "***Interest Rate***"). The Interest Rate shall commence to accrue on the one-year anniversary of the date hereof and shall continue accruing on the outstanding principal until paid in full upon maturity and shall be calculated on the basis of a 365-day year for the actual number of days elapsed.

1.   **Maturity; Payments; Prepayments; Waiver of Presentment**.

    **1.1     Maturity Date.** Payment of principal and unpaid accrued interest on this Promissory Note (this "***Note***") shall be immediately due and payable on the earlier to occur of (i) the closing of Borrower's first issuance and sale of Equity Securities with the principal purpose of raising capital and (ii) the five-year anniversary of the date of this Note (the "***Maturity Date***"). If this Note has not been paid in full at the Maturity Date, the Lender may elect at their sole option to demand payment of the entire outstanding principal balance hereof and all unpaid accrued interest thereon (the "***Payment Demand***"). For purposes of this Note, "***Equity Securities***" shall mean Borrower's equity securities or any securities conferring the right to purchase Borrower's equity securities or securities convertible into, or exchangeable for (with or without additional consideration), Borrower's equity securities, except for convertible promissory notes, simple agreements for future equity and any security granted, issued and/or sold by Borrower to any director, officer, employee or consultant of Borrower in such capacity for the primary purpose of soliciting or retaining their services.

    **1.2     Payments.** All amounts payable hereunder shall be payable to Lender at the address specified in writing by Lender. All payments (including any prepayments) of interest and principal shall be in lawful money of the United States of America. Payment on this Note shall be applied first to accrued interest on this Note, and thereafter to the outstanding principal balance hereof.

    **1.3     Prepayments.** The Borrower may prepay this Note, in whole or in part, without the prior written consent of the Lender and without penalty or premium.

1.

**1.4    Waiver**.  Borrower hereby waives demand, notice, presentment, protest, notice of dishonor, diligence, notice of default, notice of non-payment and all other notices or demands relative to this instrument.

**1.5    Termination**. This Note shall terminate and no payment of principal and unpaid accrued interest shall be due hereunder in the event Lender exercises the Repurchase Right (as defined in that certain Merger Agreement by and among Borrower, Lender and Brelly, Inc. dated of even date herewith).

**2.  Governing Law.**  This Note shall be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana, excluding conflict of laws principles that would cause the application of laws of any other jurisdiction.

**3.  Severability**.  In the event one or more of the provisions of this Note should, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Note, and this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

**IN WITNESS WHEREOF,** Borrower and Lender have executed this Note as of the date first written above.

| INSURANCE CLAIM SERVICES, INC. | |
|---|---|
| DocuSigned by: *Tobias Patch* <br> By: _____ <br> C73C459CBB004B9... | DocuSigned by: *Scott Wolfe* <br> By: _____ <br> 9B22F477496B416... |
| Printed Name: Tobias Patch | Printed Name: Scott Wolfe |
| Title: Founder \| CEO | |

*SIGNATURE PAGE TO PROMISSORY NOTE*

2.

**MERGER AGREEMENT**

This Agreement and Plan of Merger (this "*Agreement*"), by and among Brelly, Inc., a Delaware corporation ("*Brelly*"), Insurance Claim Services, Inc., a Delaware corporation ("*ICS*"), and Scott Wolfe ("*Wolfe*"), is made as of this 5 day of April, 2023.

## Recitals

WHEREAS, Wolfe is the sole stockholder of Brelly; and

WHEREAS, each of Brelly and ICS desire hereby to set forth the terms and conditions upon which Brelly shall merge with and into ICS (the "*Merger*"), following which, ICS shall be the surviving corporation (the "*Surviving Corporation*"); and

WHEREAS, Section 251 of the General Corporation Law of the State of Delaware (the "*DGCL*") authorizes the merger of two or more Delaware corporations; and

WHEREAS, the Board of Directors of Brelly has (i) approved this Agreement and the consummation of the Merger and (ii) caused this Agreement to be submitted to all of the stockholders of Brelly for approval; and

WHEREAS, the Board of Directors of ICS has (i) approved this Agreement and the consummation of the Merger and (ii) caused this Agreement to be submitted to all of the stockholders of ICS for approval; and

WHEREAS, all of the stockholders of each of Brelly and ICS have approved of the terms and conditions of this Agreement.

## Agreement

NOW, THEREFORE, in consideration of the premises and the mutual agreements and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

ARTICLE 1.
THE MERGER.

Section 1.1     The Merger.

(a)     Upon the terms and subject to the satisfaction or, to the extent provided herein, the waiver, of the conditions set forth in this Agreement, and in accordance with the DGCL, at the Effective Time, Brelly will be merged with and into ICS. As a result of the Merger, the separate corporate existence of Brelly will cease, and ICS will continue as the Surviving Corporation. The Merger will have the effects set forth in the applicable provisions of the DGCL. Without limiting the generality of the foregoing, at the Effective Time, all of the property, rights, privileges, immunities, powers and franchises of ICS and Brelly will vest in the Surviving Corporation, and all of the debts, liabilities and duties of ICS and Brelly will become the debts, liabilities and duties of the Surviving Corporation.

1

PD.40646454.5

(b)     At the Effective Time, the certificate of incorporation of ICS will, by virtue of the Merger, be amended so as to read in its entirety in the form set forth as Exhibit A hereto, and as so amended and restated shall be the certificate of incorporation of the Surviving Corporation until thereafter amended as provided therein or by applicable statute, rule, ordinance, decree, regulation, or judicial or administrative order or any other requirements or directives of any governmental authority ("*Law*"). In addition, the bylaws of ICS in effect immediately prior to the Effective Time shall thereafter be the bylaws of the Surviving Corporation (other than in respect of the name of the Surviving Corporation), until thereafter amended as provided therein or by applicable Law.

(c)     The directors of ICS immediately prior to the Effective Time will, from and after the Effective Time, be the initial directors of the Surviving Corporation, each to hold office in accordance with the certificate of incorporation and bylaws of the Surviving Corporation until their respective successors have been duly elected, designated or qualified, or until their earlier death, resignation or removal in accordance with the certificate of incorporation and bylaws of the Surviving Corporation. The officers of ICS immediately prior to the Effective Time, from and after the Effective Time, will be the officers of the Surviving Corporation, each to hold office in accordance with the certificate of incorporation and bylaws of the Surviving Corporation until their respective successors have been duly elected, designated or qualified, or until their earlier death, resignation or removal in accordance with the certificate of incorporation and bylaws of the Surviving Corporation.

(d)     If at any time after the Effective Time, the Surviving Corporation determines, in its sole discretion, or is advised, that any deeds, bills of sale, instruments of conveyance, assignments, assurances or any other actions or things are necessary or desirable to vest, perfect or confirm of record or otherwise in the Surviving Corporation its right, title or interest in, to or under any of the rights, properties or assets of either of ICS or Brelly acquired or to be acquired by the Surviving Corporation as a result of, or in connection with, the Merger or otherwise to carry out this Agreement, then the officers and directors of the Surviving Corporation shall be authorized to execute and deliver, in the name and on behalf of either ICS or Brelly, all such deeds, bills of sale, instruments of conveyance, assignments and assurances and to take and do, in the name and on behalf of each of such corporations or otherwise, all such other actions and things as may be necessary or desirable to vest, perfect or confirm any and all right, title or interest in, to and under such rights, properties or assets in the Surviving Corporation or otherwise to carry out this Agreement.

Section 1.2     The Closing.  The closing of the Merger (the "*Closing*") will take place on the date hereof. Substantially contemporaneously with the Closing, ICS will cause the certificate of merger in the form attached hereto as Exhibit B (the "*Certificate of Merger*") to be duly executed and filed with the Secretary of State of the State of Delaware in accordance with the relevant provisions of the DGCL and will make all other filings or recordings required under the DGCL. The Merger will become effective at the time the Certificate of Merger will have been duly filed with the Secretary of State of the State of Delaware and specified in the Certificate of Merger, such date and time, the "*Effective Time*".

Section 1.3     Promissory Note. At the Closing, ICS shall deliver to Wolfe a promissory note in the principal amount of Seventy-Five Thousand and 00/100 Dollars ($75,000.00) (the

2

"*Note*"), in the form attached hereto as Exhibit C, which is being issued to Wolfe as reimbursement for expenses incurred in connection with the formation of Brelly and the transactions contemplated hereby.

## ARTICLE 2.
## TREATMENT OF SHARES.

Section 2.1    Shares of Brelly. At the Effective Time, each share of common stock, par value $0.001 per share, of Brelly outstanding immediately prior to the Merger (the "*Brelly Shares*") shall, by virtue of the Merger and without any action on the part of the holders thereof, be converted into 0.025 shares of common stock, par value $0.00001 per share, of ICS (the "*ICS Common Stock*"), for a total of Five Hundred Thousand (500,000) shares of ICS Common Stock. ICS shall not issue fractional shares with respect to the conversion. Any fractional share of ICS Common Stock that would otherwise be issued as a result of the conversion will be rounded up to the nearest whole share. Following the Effective Time, all shares of common stock of Brelly shall no longer be outstanding and shall automatically be canceled and retired and shall cease to exist, and each holder of shares of Brelly common stock immediately prior to the Effective Time shall cease to have any rights with respect thereto.

Section 2.2    Shares of ICS. At the Effective Time, each share of common stock, par value $0.0001 per share, of ICS outstanding immediately prior to the Merger (the "*ICS Shares*") shall, by virtue of the Merger and without any action on the part of the holder thereof, be unaffected by the Merger and shall remain outstanding as a share of stock of ICS, as the Surviving Corporation.

## ARTICLE 3.
## REPRESENTATION AND WARRANTIES OF BRELLY.

Brelly and Wolfe, on a joint and several basis, represent and warrant to ICS as follows:

Section 3.1    Title to Brelly Shares. The Brelly Shares are owned of record and beneficially directly by Wolfe free and clear of all liens, mortgages, pledges, encumbrances or other restrictions or limitations of any nature whatsoever ("*Liens*") (other than legends or other restrictions solely evidencing the restricted nature of such Brelly Shares pursuant to applicable state and federal securities Laws). There are no outstanding options, warrants, rights (including conversion or preemptive rights and rights of first refusal or similar rights) or agreements, orally or in writing, to purchase or acquire the Brelly Shares.

Section 3.2    Power and Authority.  Brelly (i) is a corporation, duly organized, validly existing, and in good standing under the laws of the State of Delaware, and (ii) has full power and authority to carry on the activities in which it is engaged, and has all of the necessary powers to own its assets.

Section 3.3    Authorization.  Brelly has full power and authority to execute and deliver this Agreement, to consummate the transactions contemplated hereby and to perform its obligations hereunder.  The execution, delivery and performance by Brelly of this Agreement and the consummation by Brelly of the transactions contemplated hereby have been duly authorized by all necessary corporate action on its part.  This Agreement constitutes a valid and legally binding

3

obligation of Brelly enforceable against Brelly in accordance with its respective terms and conditions.

Section 3.4    Title.  Brelly has good title to all of its assets which it owns, in each case free and clear of Liens.  No third party has any rights to purchase any of Brelly's assets, or any interest therein or any portion thereof, including rights of first offer or refusal.

Section 3.5    Litigation.  There are no judicial, administrative or arbitral claims, audit examinations, actions, inquiries, proceedings or investigations pending or, to Brelly's knowledge, threatened, as of the date hereof, (a) against or involving Brelly relating to Brelly or its assets, or (b) which seek to question, delay, or prevent the consummation of the transactions contemplated by this Agreement.

Section 3.6    No Undisclosed Liabilities.  Brelly does not have any material liabilities or obligations (whether absolute, accrued, contingent or otherwise) that have not been disclosed to ICS.

Section 3.7    Intellectual Property.  Brelly is the sole and exclusive owner of all Brelly Intellectual Property, free and clear of all Liens, or has a perpetual, irrevocable and assignable right to use the same for all purposes necessary for ICS to use such Brelly Intellectual Property, in the same manner as Brelly.  Brelly has not granted to any person or entity the right to use any Brelly Intellectual Property.  To Brelly's knowledge, Brelly's use of Brelly Intellectual Property does not infringe on the rights of any person or entity or violate any license or other agreement applicable thereto.  There is no claim pending or to Brelly's knowledge, threatened within the past two years, against Brelly with respect to Brelly Intellectual Property.  Brelly has not asserted any claim or litigation concerning infringement or misappropriation of Brelly Intellectual Property by third parties, and Brelly knows of no infringement or misappropriation of Brelly Intellectual Property by third parties.  For purposes of this Agreement, "***Brelly Intellectual Property***" shall be defined as: (i) all inventions, whether or not patentable, reduced to practice or made the subject of one or more patent registrations or applications, whether pending or not, (ii) improvements to all such inventions disclosed in each such registration, patent or patent application, (iii) trademarks, service marks, brands, logos, domain names, trade names and corporate names (whether or not registered) in all nations or other jurisdictions throughout the world, as well as all variations, derivations, combinations, registrations and applications for registration of the foregoing and all goodwill associated therewith, (iv) copyrights (whether or not registered) and registrations and applications for registration thereof in all nations or other jurisdictions throughout the world, including without limitation all derivative works, exploitation rights, renewals, extensions, reversions or restorations associated with such copyrights, now or hereafter provided by Law (as defined herein), regardless of the medium of fixation or means of expression, (v) trade secrets and confidential information (including without limitation pricing and cost information, business and marketing plans and customer and supplier lists) and know-how (including without limitation manufacturing and production processes and techniques and research and development information), (vi) databases and data collections, (vii) copies and tangible embodiments of any of the foregoing, in whatever form or medium, (viii) all rights to obtain and rights to apply for patents, and to register trademarks and copyrights, and (ix) all rights in all of the foregoing provided by treaties, conventions and common law, which are owned by Brelly in any name, used by Brelly in any name, or licensed by Brelly in any name (as licensee or licensor), and without regard for the jurisdiction or location

4

PD.40646454.5

where such Brelly Intellectual Property assets was conceived, created, practiced or currently located.

## ARTICLE 4.
## REPRESENTATION AND WARRANTIES OF ICS.

ICS represents and warrants to Brelly as follows:

Section 4.1    Title to ICS Shares. The ICS Shares are owned of record and beneficially directly by the shareholder(s), and in those amounts, as set forth on Schedule 4.1, free and clear of all Liens (other than legends or other restrictions solely evidencing the restricted nature of such ICS Shares pursuant to applicable state and federal securities Laws). There are no outstanding options, warrants, rights (including conversion or preemptive rights and rights of first refusal or similar rights) or agreements, orally or in writing, to purchase or acquire the ICS Shares.

Section 4.2    Power and Authority. ICS (i) is a corporation, duly organized, validly existing, and in good standing under the laws of the State of Delaware, and (ii) has full power and authority to carry on the activities in which it is engaged, and has all of the necessary powers to own its assets.

Section 4.3    Authorization. ICS has full power and authority to execute and deliver this Agreement, to consummate the transactions contemplated hereby and to perform its obligations hereunder.  The execution, delivery and performance by ICS of this Agreement and the consummation by ICS of the transactions contemplated hereby have been duly authorized by all necessary corporate action on its part.  This Agreement constitutes a valid and legally binding obligation of ICS enforceable against ICS in accordance with its respective terms and conditions.

Section 4.4    Title.  ICS has good title to all of its assets which it owns, in each case free and clear of Liens.  No third party has any rights to purchase any of ICS's assets, or any interest therein or any portion thereof, including rights of first offer or refusal.

Section 4.5    Litigation.  There are no judicial, administrative or arbitral claims, audit examinations, actions, inquiries, proceedings or investigations pending or, to ICS's knowledge, threatened, as of the date hereof, (a) against or involving ICS relating to ICS or its assets, or (b) which seek to question, delay, or prevent the consummation of the transactions contemplated by this Agreement.

Section 4.6    No Undisclosed Liabilities.  ICS does not have any material liabilities or obligations (whether absolute, accrued, contingent or otherwise) that have not been disclosed to Brelly.

## ARTICLE 5.
## TERMINATION, AMENDMENT.

Section 5.1    Termination. This Agreement may be terminated and the Merger abandoned at any time prior to the Effective Time, whether before or after approval by all of the stockholders of Brelly and ICS, by mutual consent of the Boards of Directors of Brelly and ICS.

PD.40646454.5

Section 5.2    <u>Effect of Termination</u>. If this Agreement is terminated pursuant to Section 5.1, above, this Agreement shall become void and of no effect with no liability on the part of either party hereto.

Section 5.3    <u>Amendment</u>. The parties hereto may, by mutual consent of the Board of Directors of Brelly and ICS, amend, modify or supplement this Agreement in such manner as may be agreed upon by them in writing at any time before or after adoption and approval of this Agreement by the stockholders of Brelly, but not later than the Effective Time; <u>provided, however,</u> that no such amendment, modification or supplement that has not been adopted and approved by all of the stockholders of Brelly shall be inconsistent with the provisions of the DGCL.

ARTICLE 6.
<u>MISCELLANEOUS</u>.

Section 6.1    <u>Repurchase Right</u>. In the event the Surviving Corporation ceases to be a going concern (as reasonably determined in good faith by the Board of Directors of the Surviving Corporation), then Wolfe shall have the right to repurchase from the Surviving Corporation the Brelly Intellectual Property existing as of the date of this Agreement for (i) an amount equal to One Hundred and 00/100 Dollars ($100.00) and (ii) cancellation of the Note (the "***Repurchase Right***").  The Repurchase Right shall terminate on the earlier to occur of (i) conversion or termination of the SAFE issued by the Surviving Corporation to Wolfe or his affiliate or (ii) two years from the date hereof.

Section 6.2    <u>Post-Closing Retention of Counsel; Retention of Attorney-Client Communications Privileges</u>. Following the Closing, in any dispute or proceeding arising under or in connection with, or any other matter related to, this Agreement, Wolfe shall have the right, at his election, to retain Jones Walker LLP (the "***Law Firm***") to represent him in such matter, and ICS, together with any successor or affiliate thereof, hereby irrevocably waives any conflict of interest or ethical conflict in connection with, and consents to (and will cause its affiliates including, after the Closing, the Surviving Corporation and its affiliates to) waive any conflict of interest or ethical conflict, and consent to any such representation in any such matter and the communication by such counsel to Wolfe in connection with any such representation of any fact known to such counsel arising by reason of such counsel's prior representation of Wolfe or Brelly. ICS irrevocably agrees (and will cause its affiliates including, after the Closing, the Surviving Corporation and its affiliates to agree) that any communication occurring on or prior to Closing between the Law Firm on the one hand and Brelly, Wolfe or any of their respective affiliates, on the other hand, including that in any way relates to the transactions contemplated hereby, including any representation, warranty, or covenant of any party under this Agreement or any related agreement (the "***Attorney-Client Communications***") shall not be subject to disclosure to, or use or reliance by, ICS or its affiliates, including in connection with any process relating to a dispute arising under or in connection with this Agreement or otherwise, and shall for all purposes be deemed to be privileged communications that shall continue after the Closing and be deemed assigned to and controlled by Wolfe. None of ICS, its affiliates or the Surviving Corporation nor any person or entity purporting to act on behalf of or through any of the foregoing shall (a) seek to obtain, use or rely on an Attorney-Client Communication by any process on the grounds that the privilege attaching to such communications belongs to ICS, its affiliates or the Surviving Corporation or has been waived, including due to such Attorney-Client Communication being

6

PD.40646454.5

contained or found in the records of Brelly or Wolfe, or (b) take any action which could cause any Attorney-Client Communication to cease being a confidential communication or to otherwise lose protection under the attorney-client privilege or any other evidentiary privilege, including waiving such protection in any dispute with a person or entity that is not Wolfe. In furtherance but not in limitation of the foregoing, prior to the Closing, Brelly and Wolfe shall be entitled (but not required) to remove from their records any Attorney-Client Communications. After the Closing, at the request of the Wolfe, ICS, its affiliates and the Surviving Corporation shall take (or shall cause to be taken) all steps that are reasonably necessary or appropriate to preserve the confidentiality of and privileges associated with the Attorney-Client Communications.

Section 6.3    Survival.  The representations and warranties set forth in Articles 3 and 4 shall survive the execution and delivery of this Agreement and the consummation of the Merger.

Section 6.4    No Waiver. No failure or delay by any party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

Section 6.5    Entire Agreement. This Agreement, the Note, that certain Advisor Agreement by and between the Company and Wolfe and that certain Side Letter Agreement by and between Wolfe and Tobias Patch, including any schedules and exhibits hereto and thereto, constitute the sole agreement of the parties, and supersede all previous oral negotiations and prior writings with respect to the subject matter hereof.

Section 6.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, provided that no party may assign, delegate or otherwise transfer any of its rights or obligations under this Agreement without the prior written consent of the other party hereto.

Section 6.7    No Third Party Beneficiaries. This Agreement is not intended to confer upon any person other than the parties hereto any rights or remedies hereunder.

Section 6.8    Governing Law. This Agreement shall in all respects be governed and construed in accordance with the law of the State of Delaware without regard to principles of conflicts of law.

Section 6.9    Execution. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same agreement, and when executed shall be binding on the parties hereto. Any signature to this Agreement delivered by facsimile transmission, pdf or other electronic transmission shall be deemed to be an original signature.

Section 6.10   Severability. In the event that one or more provisions of this Agreement shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

*[Signature pages to follow]*

7

PD.40646454.5

In witness whereof, the parties have caused this Agreement and Plan of Merger to be executed as the date first above written.

**BRELLY, INC.**

By: _Scott Wolfe_

Name: Scott Wolfe

Title: President

**INSURANCE CLAIM SERVICES, INC.**

By: _Tobias Patch_

Name: Tobias Patch

Title: Founder | CEO

By: _Scott Wolfe_

Scott Wolfe

[Signature Page to Merger Agreement]

PD.40646454.5

# EXHIBIT A

## Certificate of Incorporation

(see attached)

PD.40646454.5

**EXHIBIT B**

**Certificate of Merger**

(see attached)

PD.40646454.5

**EXHIBIT C**

**Promissory Note**

(see attached)

PD.40646454.5

## SCHEDULE 4.1

### ICS Capitalization

| Stockholder | Shares of ICS Common Stock |
|---|---|
| Tobias Patch | 8,000,000 |
| Alston Walker | 1,000,000* |
| Reed Stephens | 250,000* |
| Harrison Fox | 250,000* |

* Subject to vesting

[Signature Page to Merger Agreement]

PD.40646454.5

**CERTIFICATE OF MERGER**

**OF**

**BRELLY, INC.,**
a Delaware corporation

**WITH AND INTO**

**INSURANCE CLAIM SERVICES, INC.,**
a Delaware corporation

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

The undersigned corporation, Insurance Claim Services, Inc. ("ICS"), formed under the laws of the State of Delaware and acting pursuant to the §251(c) of the Delaware General Corporation Law (the "DGCL"), executed this Certificate of Merger as follows:

*First:* The name and state of incorporation of each of the constituent corporations in the merger are as follows:

| *Name* | *State of Formation* |
|---|---|
| Brelly, Inc. | Delaware |
| Insurance Claim Services, Inc. | Delaware |

*Second:* An Agreement of Merger has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations in accordance with the requirements of §251(c) of the DGCL.

*Third:* That the name of the surviving corporation shall be "Brelly, Inc.", a Delaware corporation, and it shall be governed by the laws of the State of Delaware.

*Fourth*: The Certificate of Incorporation of ICS, as in effect immediately prior to the Effective Date (as defined in Article Fifth), shall be amended and restated in its entirety o the Effective Date to read as set forth on Exhibit A and as so amended shall be the Certificate of Incorporation of the Surviving Corporation, until thereafter amended in accordance with its terms and applicable law.

*Fifth*: The merger is to become effective on the date filed with the Delaware Secretary of State (the "Effective Date").

*Sixth:* The executed Agreement of Merger is on file at 2425 Ryan Drive Alvin, TX 77511, the principal place of business of the surviving corporation.

*Seventh:* A copy of the Agreement of Merger will be furnished by the surviving corporation, on request and without cost, to any stockholder of the constituent corporations.

PD.40677430.1

***Eighth:*** All provisions of the laws of the State of Delaware applicable to the proposed merger have been complied with.

This Certificate of Merger is executed by ICS acting through its duly authorized officer, on April 5 , 2023.

INSURANCE CLAIM SERVICES, INC.

By: *Tobias Patch*

Name: Tobias Patch
Title: President and CEO

- 2 -

**EXHIBIT A**
**AMENDED AND RESTATED**
**CERTIFICATE OF INCORPORATION**
**OF**
**INSURANCE CLAIM SERVICES INC.**

Insurance Claim Services Inc., a corporation organized and existing under and by virtue of the provisions of the Delaware General Corporation Law (the "***DGCL***"), hereby certifies that:

1. The current name of this corporation is Insurance Claim Services Inc. The original Certificate of Incorporation was filed with the Secretary of State of the State of Delaware pursuant to the DGCL on October 16, 2001 (the "***Original Certificate***").

2. Pursuant to Sections 242 and 245 of the DGCL, this Amended and Restated Certificate of Incorporation, which restates and further amends the provisions of the Original Certificate, was duly proposed by the board of directors of Insurance Claim Services Inc. on April 5, 2023, and adopted by its stockholders on April 5, 2023:

3. The text of the Amended and Restated Certificate of Incorporation reads in its entirety as follows:

ARTICLE I

The name of the corporation is Brelly, Inc. (the "**Corporation**").

ARTICLE II

The address of the Corporation's registered office in the state of Delaware is 251 Little Falls Drive, Wilmington, New Castle County, Delaware 19808. The name of its registered agent at such address is Corporation Service Company.

ARTICLE III

The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the Delaware General Corporation Law.

ARTICLE IV

The aggregate number of shares which the Corporation shall have authority to issue is 10,000,000 shares of capital stock all of which shall be designated "Common Stock" and have a par value of $0.00001 per share.

ARTICLE V

The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors. Elections of directors need not be by written ballot unless otherwise provided in the Bylaws of the Corporation. In furtherance of and not in limitation of the powers

- 3 -

PD.40677430.1

conferred by the laws of the state of Delaware, the Board of Directors of the Corporation is expressly authorized to make, amend or repeal Bylaws of the Corporation.

## ARTICLE VI

(A)    To the fullest extent permitted by the Delaware General Corporation Law, as the same exists or as may hereafter be amended, neither a director of the Corporation nor an officer of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or an officer.

(B)    The Corporation shall indemnify to the fullest extent permitted by law any person made or threatened to be made a party to an action or proceeding, whether criminal, civil, administrative or investigative, by reason of the fact that he, his testator or intestate is or was a director or officer of the Corporation or any predecessor of the Corporation, or serves or served at any other enterprise as a director or officer at the request of the Corporation or any predecessor to the Corporation.

(C)    Neither any amendment nor repeal of this Article VI, nor the adoption of any provision of the Corporation's Certificate of Incorporation inconsistent with this Article VI, shall eliminate or reduce the effect of this Article VI in respect of any matter occurring, or any action or proceeding accruing or arising or that, but for this Article VI, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

## ARTICLE VII

Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (A) any derivative action or proceeding asserting a claim on behalf of the Corporation, (B) any action or proceeding asserting a claim of breach of a fiduciary duty owed by any current or former director, officer, employee or agent of the Corporation to the Corporation or the Corporation's stockholders, (C) any action or proceeding asserting a claim against the Corporation arising pursuant to any provision of the Delaware General Corporation Law or the Corporation's Certificate of Incorporation or Bylaws, (D) any action or proceeding asserting a claim as to which the Delaware General Corporation Law confers jurisdiction upon the Court of Chancery of the State of Delaware, or (E) any action or proceeding asserting a claim governed by the internal affairs doctrine, in each case subject to said Court of Chancery having personal jurisdiction over the indispensable parties named as defendants therein.

## ARTICLE VIII

The name and mailing address of the incorporator are as follows:

Tobias Patch
2425 Ryan Drive
Alvin, TX 77511

\*\*\*\*\*\*

- 4 -

DocuSign Envelope ID: C3270199-3B80-4FC2-AD80-54107A6639F8

IN WITNESS WHEREOF, Insurance Claims Services Inc. has caused this Amended and Restated Certificate of Incorporation to be duly executed in its corporate name by its President and Chief Executive Officer, thereto duly authorized, this 5___ day of April, 2023.


_____

Name:  Tobias Patch
Title:   President and Chief Executive Officer

PD.40677430.1

## SIDE LETTER AGREEMENT

This agreement (this "**Agreement**") is entered into on April 5 , 2023 in connection with the merger of Brelly, Inc. ("**Brelly**") with and into Insurance Claim Services, Inc. (the "**Company**") on or about the date of this Agreement (the "**Merger**").  As a material inducement to cause Scott Wolfe ("**Mr. Wolfe**"), the sole stockholder of Brelly, to consummate the Merger, Tobias Patch ("**Mr. Patch**"), the majority stockholder of the Company, agrees to the following:

Within sixty (60) days of the date hereof, Mr. Patch shall (i) cause the Company to establish a board of directors with more than one member (the "**New Board**") and (ii) vote, or cause to be voted, all shares of common stock of the Company owned by Mr. Patch, and  all shares of common stock of the Company over which he has voting control, to ensure that Mr. Wolfe shall be elected to a seat on the New Board.  For the avoidance of doubt, the foregoing obligation of Mr. Patch shall be superseded by the terms of any subsequent voting agreement or similar written arrangement governing the election of directors of the Company.

Any provision of this Agreement may be amended, waived or modified upon the written consent of the Mr. Wolfe and Mr. Patch.  This Agreement may be executed via electronic or scanned signature in one or more separate counterparts, which, when taken together and as a whole, shall comprise one and the same instrument.

[*signatures to follow*]

PD.40731756.3

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed and delivered.

DocuSigned by:

*Tobias Patch*

C73C459CBB004B9...

Tobias Patch

DocuSigned by:

*Scott Wolfe*

9B22F477496B416...

Scott Wolfe

*[Signature Page to Side Letter Agreement]*

PD.40731756.3

**ACTION BY WRITTEN CONSENT OF THE
SOLE SHAREHOLDER AND SOLE DIRECTOR
OF
BRELLY, INC.**

Effective as of April 5 , 2023

The undersigned, being the sole shareholder and director of Brelly, Inc., a Delaware corporation ("Brelly"), acting pursuant to Sections 228 and 141(f) of the Delaware General Corporation Law, hereby adopts the following resolutions by written consent:

WHEREAS, Scott Wolfe ("Mr. Wolfe") is the sole shareholder owning 100% of the issued and outstanding stock of Brelly (the "Merging Entity");

WHEREAS, Mr. Wolfe is also the sole director of Brelly and has deemed it advisable and in the best interest of the Merging Entity, and its sole shareholder, to merge Brelly with and into Insurance Claim Services, Inc., a Delaware corporation ("ICS"), with ICS being the Surviving Entity (the "Merger");

WHEREAS, Mr. Wolfe, as the sole shareholder and director desires to authorize an agreement of merger, and any and all other agreements, plans, certificates, documents, or other instruments (collectively, the "Merger Documents") deemed necessary to effectuate the Merger, and to name and appoint authorized persons, agents, managers and/or officers to execute, and deliver the Merger Documents and to do or cause to be done all other acts and things as may be necessary, desirable or appropriate in connection with the consummation of the Merger and the Merger Documents.

NOW THEREFORE, BE IT RESOLVED, that Mr. Wolfe, as the sole shareholder and director of Brelly, hereby authorizes and approves the Merger in all respects;

FURTHER RESOLVED, that Merger Documents be, and the same hereby are, authorized and approved in all respects; and

FURTHER RESOLVED, that Scott Wolfe, in his capacity as President and Chief Executive Officer of Brelly, and as an authorized person, authorized agent and/or officer, as applicable (the "Authorized Officer"), be, and hereby is, authorized and empowered on behalf of and in the name of Brelly, in his sole discretion, to execute and deliver the Merger Documents and to do or cause to be done all other acts and things as may be necessary, desirable, or appropriate in connection with the consummation of the Merger and the Merger Documents; and

FURTHER RESOLVED, that the Authorized Officer be and is hereby authorized, empowered, and directed to execute and deliver on behalf of Brelly and to file or cause to be filed such other documents, and to take such other action, as may be required by law or as may be necessary or proper in his judgment in connection with the foregoing; and

FURTHER RESOLVED, that the Authorized Officer be and is hereby authorized on behalf of Brelly to execute and deliver or cause to be made, executed and delivered, all such officer's certificates and such other agreements, undertakings, documents or instruments or to perform such other acts as he may deem necessary or appropriate to effectuate the purpose and intent of the foregoing resolutions in his sole discretion; and

FURTHER RESOLVED, that the execution and delivery by the Authorized Officer of any instruments or documents authorized by these resolutions or of any instruments or documents executed in the accomplishment of any action or actions so authorized is (or shall become upon delivery) the

PD.40677370.1

enforceable and binding act of Brelly; and

FURTHER RESOLVED, that the Authorized Officer be and is hereby authorized, empowered, and directed to take any and all actions as he, in his sole discretion, shall deem necessary or advisable to consummate the transactions contemplated by any of the foregoing resolutions and to perform any of Brelly's obligations thereunder; and

FURTHER RESOLVED, that any and all actions described in the foregoing resolutions heretofore taken on behalf of Brelly by any of its officers are hereby approved, confirmed and ratified as the act of Brelly without the necessity of any further action.

Executed as of the date first written above.

SOLE SHAREHOLDER AND DIRECTOR

DocuSigned by:

Scott Wolfe

9B22F477496B416...

Scott Wolfe

PD.40677370.1

**ACTION BY WRITTEN CONSENT OF THE**
**SHAREHOLDERS AND SOLE DIRECTOR**
**OF**
**INSURANCE CLAIM SERVICES, INC.**

Effective as of April 5 , 2023

The undersigned, being all of the shareholders and sole director of Insurance Claim Services, Inc., a Delaware corporation ("ICS"), acting pursuant to Sections 228 and 141(f) of the Delaware General Corporation Law, hereby adopt the following resolutions by written consent:

### I.      Merger

WHEREAS, the undersigned shareholders (collectively, "Shareholders") own 100% of the issued and outstanding stock of ICS (the "Merging Entity");

WHEREAS, Tobias Patch ("Mr. Patch") is also the sole director of ICS and has deemed it advisable and in the best interest of the Merging Entity, and its Shareholders, to merge with Brelly, Inc., a Delaware corporation ("Brelly"), with ICS being the Surviving Entity, but taking the name of "Brelly" in the transaction (the "Merger");

WHEREAS, the Shareholders and Mr. Patch, as the sole director desires to authorize an agreement of merger, and any and all other agreements, plans, certificates, documents, or other instruments (collectively, the "Merger Documents") deemed necessary to effectuate the Merger, and to name and appoint authorized persons, agents, managers and/or officers to execute, and deliver the Merger Documents and to do or cause to be done all other acts and things as may be necessary, desirable or appropriate in connection with the consummation of the Merger and the Merger Documents.

NOW THEREFORE, BE IT RESOLVED, that the Shareholders and Mr. Patch, as the sole director of ICS, hereby authorize and approve the Merger in all respects;

FURTHER RESOLVED, that Merger Documents be, and the same hereby are, authorized and approved in all respects; and

FURTHER RESOLVED, that Tobias Patch, in his capacity as President and Chief Executive Officer of ICS, and as an authorized person, authorized agent and/or officer, as applicable (the "Authorized Officer"), be, and hereby is, authorized and empowered on behalf of and in the name of ICS, in his sole discretion, to execute and deliver the Merger Documents and to do or cause to be done all other acts and things as may be necessary, desirable, or appropriate in connection with the consummation of the Merger and the Merger Documents; and

FURTHER RESOLVED, that the Authorized Officer be and is hereby authorized, empowered, and directed to execute and deliver on behalf of ICS and to file or cause to be filed such other documents, and to take such other action, as may be required by law or as may be necessary or proper in his judgment in connection with the foregoing.

### II.      Amended and Restated Certificate of Incorporation

WHEREAS, ICS previously filed a Certificate of Incorporation with Secretary of State of the State of Delaware on October 16, 2001 (the "Original Certificate");

WHEREAS, in connection with the Merger, ICS desires to amend the Original Certificate to change its name to "Brelly, Inc." with the Secretary of State of the State of Delaware;

PD.40691420.1

WHEREAS, in August 2022, amendments to the DGCL took effect that permit corporations to eliminate or limit the personal liability of officers (the "Exculpation Amendment");

WHEREAS, in connection with the Merger and the Exculpation Amendment, the undersigned deem it advisable, and in the best interest of ICS and its stockholders, to amend and restate the Original Certificate, in the form attached hereto as **Exhibit A** (the "Amended and Restated Certificate of Incorporation"), to (i) change ICS's name to "Brelly, Inc." and (ii) exculpate the personal liability of officers to the furthest extent permitted by law.

RESOLVED, that the form, terms and provisions of the Amended and Restated Certificate of Incorporation are hereby in all respects approved, adopted and confirmed; and

FURTHER RESOLVED, that the Original Certificate as currently in effect be amended and restated to read as set forth in the Amended and Restated Certificate of Incorporation; and

FURTHER RESOLVED, the Authorized Officer is hereby authorized, upon receipt of stockholder approval, to execute the Amended and Restated Certificate of Incorporation and take all such action as such officer deems necessary or desirable to file the Amended and Restated Certificate of Incorporation with the Secretary of State of the State of Delaware with such changes as the Secretary of State may require, and to cause the Amended and Restated Certificate of Incorporation to become effective, and to execute and deliver all other certificates, consents, instruments and other documents as such Authorized Officer deems necessary or appropriate to carry out the intent and purpose of the foregoing resolutions, and to take all other actions as may be necessary or advisable in connection therewith; and

FURTHER RESOLVED, that, after obtaining stockholder consent and approval of the Amended and Restated Certificate of Incorporation, the Authorized Officer is hereby authorized and directed to file any appropriate notifications in all states where ICS is currently qualified to do business as a foreign company and execute all further documents necessary to carry out the intent of these resolutions.

### III.    *Omnibus Resolutions*

FURTHER RESOLVED, that the Authorized Officer be and is hereby authorized on behalf of ICS to execute and deliver or cause to be made, executed and delivered, all such officer's certificates and such other agreements, undertakings, documents or instruments or to perform such other acts as he may deem necessary or appropriate to effectuate the purpose and intent of the foregoing resolutions in his sole discretion; and

FURTHER RESOLVED, that the execution and delivery by the Authorized Officer of any instruments or documents authorized by these resolutions or of any instruments or documents executed in the accomplishment of any action or actions so authorized is (or shall become upon delivery) the enforceable and binding act of ICS; and

FURTHER RESOLVED, that the Authorized Officer be and is hereby authorized, empowered, and directed to take any and all actions as he, in his sole discretion, shall deem necessary or advisable to consummate the transactions contemplated by any of the foregoing resolutions and to perform any of ICS's obligations thereunder; and

FURTHER RESOLVED, that any and all actions described in the foregoing resolutions heretofore taken on behalf of ICS by any of its officers are hereby approved, confirmed and ratified as the act of ICS without the necessity of any further action.

PD.40691420.1

Executed as of the date first written above.

**SOLE DIRECTOR**

DocuSigned by:

*Tobias Patch*

C73C459CBB004B9...

Tobias Patch

**SHAREHOLDERS:**

DocuSigned by:

*Tobias Patch*

C73C459CBB004B9...

Tobias Patch

_____

Alston Walker

_____

Reed Stephens

_____

Harrison Fox

PD.40691420.1

**DocuSign®**

## Certificate Of Completion

Envelope Id: C32701993B804FC2AD89F4107A6639F8                    Status: Completed
Subject: Complete with DocuSign: Brelly Merger and other Documents
Source Envelope:
Document Pages: 33                Signatures: 14                 Envelope Originator:
Certificate Pages: 5              Initials: 0                    Lornalin Rose
AutoNav: Enabled                                                 Lornalin.Rose@phelps.com
EnvelopeId Stamping: Enabled                                     IP Address: 63.128.97.94
Time Zone: (UTC-06:00) Central Time (US & Canada)

## Record Tracking

Status: Original                  Holder: Lornalin Rose          Location: DocuSign
        4/4/2023 2:20:22 PM               Lornalin.Rose@phelps.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Scott Wolfe<br>scott@brelly.com<br>President<br>Security Level: Email, Account Authentication (None) | *DocuSigned by:*<br>Scott Wolfe<br>9B22F477496B416...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 72.204.144.226 | Sent: 4/4/2023 2:40:46 PM<br>Viewed: 4/4/2023 3:02:42 PM<br>Signed: 4/4/2023 3:03:09 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 4/4/2023 3:02:42 PM<br>    ID: ff39a21f-3e3c-4b5b-bbc8-9fc6f6877f1e | | |
| Tobias Patch<br>tobias@getclaimly.com<br>Founder I CEO<br>Security Level: Email, Account Authentication (None) | *DocuSigned by:*<br>Tobias Patch<br>C73C459CBB004B9...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 72.204.144.226 | Sent: 4/4/2023 2:40:46 PM<br>Resent: 4/5/2023 8:57:14 AM<br>Viewed: 4/5/2023 9:33:03 AM<br>Signed: 4/5/2023 9:35:10 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 4/5/2023 9:33:03 AM<br>    ID: 1edb8ed0-9803-4158-8696-46f1675d523d | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Will Bishop<br>William.Bishop@phelps.com<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 4/4/2023 2:40:46 PM<br>Viewed: 4/4/2023 9:34:29 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 4/14/2022 9:32:05 AM<br>    ID: f8dcdd43-0e98-49f0-8881-7b21bb088131 | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/4/2023 2:40:46 PM |
| Certified Delivered | Security Checked | 4/5/2023 9:33:03 AM |
| Signing Complete | Security Checked | 4/5/2023 9:35:10 AM |
| Completed | Security Checked | 4/5/2023 9:35:10 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/7/2021 12:36:27 PM
Parties agreed to: Scott Wolfe, Tobias Patch, Will Bishop

Case 2:24-cv-00479-NJB-JVM   Document 1-3   Filed 02/23/24   Page 32 of 34

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Phelps Dunbar LLP (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Phelps Dunbar LLP:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: darne.giese@phelps.com

**To advise Phelps Dunbar LLP of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at darne.giese@phelps.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Phelps Dunbar LLP**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to darne.giese@phelps.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Phelps Dunbar LLP**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to darne.giese@phelps.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Phelps Dunbar LLP as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Phelps Dunbar LLP during the course of your relationship with Phelps Dunbar LLP.